# SUPREME COURT OF THE UNITED STATES

E. D., A MINOR, BY HER PARENT AND NEXT FRIEND, LISA DUELL, ET AL. *v.* NOBLESVILLE SCHOOL DISTRICT, ET AL.

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 25–906.   Decided June 15, 2026

The petition for a writ of certiorari is denied.

JUSTICE ALITO, dissenting from denial of certiorari.

E. D., a high-school freshman, founded the student-run Noblesville Students For Life club at her school. When she sought approval to hang flyers at school to advertise club meetups, school administrators would not approve the flyers because they contained pictures of students with "Defund Planned Parenthood" placards. E. D., through her parents, brought this suit challenging the school's speech restriction under the First Amendment.

The panel below rejected petitioners' claim. In doing so, the panel began by asking "whether *Tinker v. Des Moines Independent Community School District*, 393 U. S. 503 (1969) or *Hazelwood School District v. Kuhlmeier*, 484 U. S. 260 (1988) supplies the governing standard." 151 F. 4th 907, 914 (CA7 2025) (some citations omitted). That question is pivotal because *Tinker* and *Hazelwood* set forth vastly different standards of review for school censorship.

In *Tinker*, the Court addressed a school policy restricting students' own speech—in that case, the wearing of armbands protesting the Vietnam War. Because students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate," the Court held that a school could not censor students' individual expression unless the school met the high bar of showing that the censored speech "would materially and substantially disrupt

the work and discipline of the school." 393 U. S., at 506, 513.

*Hazelwood*, by contrast, concerned the regulation of "school-sponsored publications, theatrical productions, and other expressive activities that students, parents, and members of the public might reasonably perceive to bear the imprimatur of the school." 484 U. S., at 271. When regulating the content of such activities, the Court held, a school need only meet the low bar of showing that the censorship is "reasonably related to legitimate pedagogical concerns." *Id.*, at 273. Applying this test, the Court held that a school could, consistent with the First Amendment, "exercise editorial control over the contents of a high school newspaper produced as part of the school's journalism curriculum." *Id.*, at 262; see also *Morse* v. *Frederick*, 551 U. S. 393, 423 (2007) (ALITO, J., concurring).

Since *Hazelwood* was decided, lower courts have struggled to ascertain its precise limits, and in my view, clarification by this Court is in order. The question addressed in that case is closely related to the question whether expression is "government speech" or private expression. And in the nearly four decades since *Hazelwood*, this Court has decided a series of cases that addressed the latter question. See, *e.g.*, *Garcetti* v. *Ceballos*, 547 U. S. 410 (2006); *Pleasant Grove City* v. *Summum*, 555 U. S. 460 (2009); *Walker* v. *Texas Div., Sons of Confederate Veterans, Inc.*, 576 U. S. 200 (2015); *Matal* v. *Tam*, 582 U. S. 218 (2017); *Shurtleff* v. *Boston*, 596 U. S. 243 (2022); *Kennedy* v. *Bremerton School Dist.*, 597 U. S. 507 (2022). The distinction between private speech and government speech is critical because the Free Speech Clause of the First Amendment constrains censorship of the first category only. See *Shurtleff*, 596 U. S., at 247–248. Accordingly, "courts must be very careful when a government claims that speech by one or more private speakers is actually government speech," because "it can be difficult to tell whether the government is using the

doctrine 'as a subterfuge for favoring certain private speakers over others based on viewpoint.'"  *Id.*, at 262 (ALITO, J., concurring in judgment) (quoting *Summum*, 555 U. S., at 473).  When *Hazelwood* was decided, this Court's decisions had never even mentioned the term "government speech."

I would grant the petition to clarify the relationship between *Hazelwood* and our subsequent government-speech decisions.  In an appropriate case, we should do so.